*Revised plea offer to correct error on page 16 line 15*

1 | NICOLA T. HANNA
United States Attorney
2 | BRANDON D. FOX
Assistant United States Attorney
3 | Chief, Criminal Division
MARIA ELENA STITELER (Cal. Bar No. 296086)
4 | Assistant United States Attorney
JEREMIAH LEVINE (Cal. Bar No. 288377)
5 | Assistant United States Attorney
General Crimes Section
6 |      1200 United States Courthouse
312 North Spring Street
7 |      Los Angeles, California 90012
Telephone: (213) 894-2400
8 |      Facsimile: (213) 894-0141
E-mail:    maria.stiteler@usdoj.gov
9 |

10 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

11 |

                    UNITED STATES DISTRICT COURT

12 |

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 |

UNITED STATES OF AMERICA,          No. CR 18-00652-VAP-1

14 |
              Plaintiff,           PLEA AGREEMENT FOR DEFENDANT
15 |                                TRACE JEVON JONES

                   v.

16 |

TRACE JEVON JONES,
17 |    aka "Trace Jones,"
       aka "Million,"
18 |    aka "Million Dollar,"
       aka "Bee,"
19 |         Defendant.

20 |

21 |      1.    This constitutes the plea agreement between TRACE JEVON

22 | JONES, also known as ("aka") "Trace Jones," aka "Million," aka

23 | "Million Dollar," aka "Bee" ("defendant") and the United States

24 | Attorney's Office for the Central District of California (the "USAO")

25 | in the above-captioned case.  This agreement is limited to the USAO

26 | and cannot bind any other federal, state, local, or foreign

27 | prosecuting, enforcement, administrative, or regulatory authorities.

28 |

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts 1 and 25 of the indictment in <u>United States v. TRACE JEVON JONES, et al.,</u> CR No. 18-00652-VAP, which charge defendant with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349 (Count 1) and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 25).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

2

1    c. At the time of sentencing, move to dismiss the
2 remaining counts of the indictment as against defendant.  Defendant
3 agrees, however, that at the time of sentencing the Court may
4 consider any dismissed charges in determining the applicable
5 Sentencing Guidelines range, the propriety and extent of any
6 departure from that range, and the sentence to be imposed.

7    d. At the time of sentencing, provided that defendant
8 demonstrates an acceptance of responsibility for the offenses up to
9 and including the time of sentencing, recommend a two-level reduction
10 in the applicable Sentencing Guidelines offense level, pursuant to
11 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
12 additional one-level reduction if available under that section.

13    e. Recommend that, with regard to Count One, and not
14 effecting the mandatory consecutive sentence of 2 years' imprisonment
15 on Count 25, defendant be sentenced to a term of imprisonment no
16 higher than the low end of the applicable Sentencing Guidelines
17 range, provided that the offense level used by the Court to determine
18 that range is 20 or higher and provided that the Court does not
19 depart downward in offense level or criminal history category.  For
20 purposes of this agreement, the low end of the Sentencing Guidelines
21 range is that defined by the Sentencing Table in U.S.S.G. Chapter 5,
22 Part A.

23         <u>NATURE OF THE OFFENSES</u>

24  4. Defendant understands that for defendant to be guilty of
25 the crime charged in Count 1, that is, Conspiracy to Commit Bank
26 Fraud, in violation of Title 18, United States Code, Section 1349,
27 the following must be true: (1) Beginning on a date unknown and
28 continuing through on or about July 20, 2018, there was an agreement

1   between two or more persons to commit Bank Fraud, in violation of

2   Title 18 United States Code, Section 1344(2), as charged in the

3   indictment; and (2) Defendant became a member of the conspiracy

4   knowing of at least one of its objects and intending to help

5   accomplish it.

6        The object of the conspiracy charged in Count 1 of the

7   indictment is Bank Fraud, in violation of Title 18 United States

8   Code, Section 1344(2).  The elements of Bank Fraud are as follows:

9   (1) Defendant knowingly carried out a scheme or plan to obtain money

10  or property from American Express National Bank by making false

11  statements or promises; (2) Defendant knew that the statements or

12  promises were false; (3) The statements or promises were material,

13  that is, they had a natural tendency to influence, or were capable of

14  influencing, a financial institution to part with money or property;

15  (4) defendant acted with the intent to defraud; and (5) American

16  Express National Bank was federally insured.

17       5.   Defendant understands that for defendant to be guilty of

18  the crime charged in Count 25, that is, Aggravated Identity Theft, in

19  violation of Title 18, United States Code, Section 1028A(a)(1), the

20  following must be true: (1) Defendant knowingly transferred,

21  possessed, or used without legal authority a means of identification

22  of another person; (2) Defendant knew that the means of

23  identification belonged to a real person; and (3) Defendant did so

24  during and in relation to the crime of Conspiracy to Commit Bank

25  Fraud, a felony in violation of Title 18, United States Code, Section

26  1349, as charged in Count 1 of the indictment.

27

28

PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, where the object is a violation of Title 18, United States Code, Section 1344(2), is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), is: 2 years' imprisonment; a 1-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 32 years' imprisonment; a 5-year period of supervised release; a fine of $1,250,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.[1]

9.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Count 25 of

[1] Defendant understands that there is case law suggesting that the term of supervised release on Count 25 could be imposed to run consecutively to the terms of supervised release on the other counts. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be 6 years, rather than 5 years as stated in the text above.

5

the indictment, is a 2-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $521,128.05, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition.   Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his/her attorney or the Court, can predict to
an absolute certainty the effect of his/her convictions on his
immigration status.  Defendant nevertheless affirms that he wants to
plead guilty regardless of any immigration consequences that his
pleas may entail, even if the consequence is automatic removal from
the United States.

## FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support pleas of guilty
to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 17 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Beginning on a date unknown and continuing through on or about
July 20, 2018, in Los Angeles and Orange Counties, within the Central
District of California, there was an agreement between two or more
persons to commit Bank Fraud, and defendant became a member of the
conspiracy knowing of its object and intending to help accomplish it.
Specifically, defendant and co-defendants TERRY ELLIS, JR., DAVION
RAYMONE ELLIS, CHERELLE DAIRE BEAL, JOHNATHAN RANDALL ROSS, and

8

1  MIRANDA CLARE HENSLEY agreed to carry out a scheme to obtain money or
2  property from American Express National Bank by making material false
3  statements or promises that defendant knew were false.  At all times
4  relevant to this plea agreement, including throughout 2016 and 2018,
5  American Express National Bank was a federally insured financial
6  institution.
7      During and in relation to the conspiracy to commit bank fraud,
8  defendant knowingly used without legal authority a means of
9  identification of another person, namely, the name and credit card
10  account number of victim M.B., which defendant knew belonged to a
11  real person.
12      Specifically, on or about November 16, 2016, at a Barneys store
13  in Los Angeles, defendant used the name of victim K.L. and a stolen
14  American Express credit card bearing a number ending in 1001 and
15  belonging to K.L., to make a $7,379.35 purchase of luxury goods.
16      On or about May 18, 2018, at a Stein Diamonds store in Los
17  Angeles, in coordination with defendant, co-defendant TERRY ELLIS JR.
18  used the name of victim M.B. and a stolen American Express credit
19  card bearing a number ending in 5018 and belonging to M.B., to make a
20  $45,154 purchase of luxury goods.
21      On or about May 18, 2018, at a Maxfield store in Los Angeles, in
22  coordination with defendant, co-defendant TERRY ELLIS JR. used the
23  name of victim M.B. and a stolen American Express credit card bearing
24  a number ending in 5018 and belonging to M.B., to make a $33,769.80
25  purchase of luxury goods.
26      On or about May 19, 2018, at a Flight Club store in Los Angeles,
27  in coordination with defendant, co-defendant TERRY ELLIS JR. used the
28  name of victim M.B. and a stolen American Express credit card bearing

1  a number ending in 5018 and belonging to M.B., to make a $14,820.89

2  purchase of luxury goods.

3      On or about May 19, 2018, at a Goyard store in Los Angles,

4  defendant and co-defendant TERRY ELLIS JR. used the name of victim

5  M.B. and a stolen American Express credit card bearing a number

6  ending in 5018 and belonging to M.B., to make two purchases of luxury

7  goods worth $7,911.38 and $33,687.69.

8      On or about May 21, 2018, at a Christian Louboutin store in

9  Costa Mesa, in coordination with defendant, co-defendants TERRY ELLIS

10  JR. and DAVION RAYMONE ELLIS used the name of victim H.C. and a

11  stolen American Express credit card bearing a number ending in 1039

12  and belonging to H.C., to make a $12,536.72 purchase of luxury goods.

13      On or about May 21, 2018, at a Gucci store in Costa Mesa,

14  defendant and co-defendants TERRY ELLIS JR. and DAVION RAYMONE ELLIS

15  used the name of victim H.C. and a stolen American Express credit

16  card bearing a number ending in 1039 and belonging to H.C., to make a

17  $16,647.38 purchase of luxury goods.

18      On or about May 21, 2018, at a Balenciaga store in Costa Mesa,

19  defendant and co-defendants TERRY ELLIS JR. and DAVION RAYMONE ELLIS

20  used the name of victim H.C. and a stolen American Express credit

21  card bearing a number ending in 1039 and belonging to H.C., to make a

22  $4,024.46 purchase of luxury goods.

23      On or about May 21, 2018, at a Fendi store in Costa Mesa,

24  defendant and co-defendants TERRY ELLIS JR. and DAVION RAYMONE ELLIS

25  used the name of victim H.C. and a stolen American Express credit

26  card bearing a number ending in 1039 and belonging to H.C., to make a

27  $4,563.21 purchase of luxury goods.

28

1    On or about May 21, 2018, at a Chanel store in Costa Mesa,
2    defendant and co-defendants TERRY ELLIS JR. and DAVION RAYMONE ELLIS
3    used the name of victim H.C. and a stolen American Express credit
4    card bearing a number ending in 1039 and belonging to H.C., to make a
5    $12,822.25 purchase of luxury goods.

6    On or about May 21, 2018, at a Yves Saint Laurent store in Costa
7    Mesa, defendant and co-defendants TERRY ELLIS JR. and DAVION RAYMONE
8    ELLIS used the name of victim H.C. and a stolen American Express
9    credit card bearing a number ending in 1039 and belonging to H.C., to
10   make a $9,908.73 purchase of luxury goods.

11   On or about June 5, 2018, at a Barneys store in Los Angeles, in
12   coordination with defendant, co-defendants DAVION RAYMONE ELLIS and
13   CHERELLE DAIRE BEAL used the name of victim M.S. and a stolen
14   American Express credit card bearing a number ending in 3009 and
15   belonging to M.S., to make a $66,031.93 purchase of luxury goods.

16   On or about June 5, 2018, at a Goyard store in Los Angeles, in
17   coordination with defendant, co-defendants DAVION RAYMONE ELLIS and
18   CHERELLE DAIRE BEAL used the name of victim M.S. and a stolen
19   American Express credit card bearing a number ending in 3009 and
20   belonging to M.S., to make a $43,882.15 purchase of luxury goods.

21   On or about June 5, 2018, at a Flight Club store in Los Angeles,
22   in coordination with defendant, co-defendants DAVION RAYMONE ELLIS
23   and CHERELLE DAIRE BEAL used the name of victim M.S. and a stolen
24   American Express credit card bearing a number ending in 3009 and
25   belonging to M.S., to make a $15,178.92 purchase of luxury goods.

26   On or about June 26, 2018, at a Barneys store in Los Angeles, in
27   coordination with defendant, co-defendant JOHNATHAN RANDALL ROSS used
28   the name of victim J.B. and a stolen American Express credit card

1  bearing a number ending in 4005 and belonging to J.B., to make a

2  $31,618.21 purchase of luxury goods.

3       On or about June 26, 2018, at a Fred Segal store in Los Angeles,

4  defendant and co-defendant JOHNATHAN RANDALL ROSS used the name of

5  victim J.B. and a stolen American Express credit card bearing a

6  number ending in 4005 and belonging to J.B., to make a $17,259.36

7  purchase of luxury goods.

8       On or about June 26, 2018, at an Apple store in Los Angeles,

9  defendant and co-defendant JOHNATHAN RANDALL ROSS used the name of

10 victim J.B. and a stolen American Express credit card bearing a

11 number ending in 4005 and belonging to J.B., to make two purchases of

12 luxury goods worth $2,914.32 and $2,620.12.

13      On or about July 16, 2018, at a Goyard store in Los Angeles, in

14 coordination with defendant, co-defendant MIRANDA CLARE HENSLEY used

15 an American Express credit card bearing a number ending in 4023 and

16 belonging to victim M.M. to attempt to make purchases totaling

17 $32,494.15 of luxury goods.

18      On or about July 16, 2018, at a Maxfield store in Los Angeles,

19 in coordination with defendant, co-defendant MIRANDA CLARE HENSLEY

20 used the name of victim M.M. and a stolen American Express credit

21 card bearing a number ending in 4023 and belonging to M.M., to make a

22 $33,406.26 purchase of luxury goods.

23      On or about July 20, 2018, at a Tourneau store in Costa Mesa, in

24 coordination with defendant, co-defendant TERRY ELLIS JR. used the

25 name of victim I.K. and a stolen American Express credit card bearing

26 a number ending in 3023 and belonging to I.K., to make a $44,599.88

27 purchase of luxury goods.

28

1    On or about July 20, 2018, at an Apple store in Costa Mesa, in
2    coordination with defendant, co-defendant TERRY ELLIS JR. used the
3    name of victim I.K. and a stolen American Express credit card bearing
4    a number ending in 3023 and belonging to I.K., to make a $2,476.10
5    purchase of luxury goods.
6    On or about July 20, 2018, at an Apple store in Costa Mesa, in
7    coordination with defendant, co-defendant TERRY ELLIS JR. used the
8    name of victim I.K. and a stolen American Express credit card bearing
9    a number ending in 3023 and belonging to I.K., to make a $3,938.27
10   purchase of luxury goods.
11   On or about July 20, 2018, at a Gucci store in Costa Mesa, in
12   coordination with defendant, co-defendant TERRY ELLIS JR. used the
13   name of victim I.K. and a stolen American Express credit card bearing
14   a number ending in 3023 and belonging to I.K., to make a $2,779.95
15   purchase of luxury goods.
16   On or about July 20, 2018, at an Apple store in Los Angeles, in
17   coordination with defendant, co-defendant TERRY ELLIS JR. used the
18   name of victim I.K. and a stolen American Express credit card bearing
19   a number ending in 3023 and belonging to I.K., to make a $4,071.53
20   purchase of luxury goods.
21   By participating in and coordinating with others to engage in
22   the above listed transactions, defendant and co-defendants falsely
23   represented to American Express that they were the authorized users
24   of the victims' credit card accounts and concealed from American
25   Express that they did not have the victims' consent to use their
26   credit card accounts.
27   The total actual financial loss that resulted from defendant's
28   conduct as part of the fraudulent scheme is at least $521,128.05.

13

SENTENCING FACTORS

16.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

17.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: Loss more than $250,000 | At least +12 | U.S.S.G. § 2B1.1(b)(1) |

Defendant agrees that the actual loss that resulted from defendant's fraud and was reasonably foreseeable to defendant is at least $521,128.05.  In addition, defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of 2 years' imprisonment on Count 25, which must run consecutive to any term of imprisonment imposed for Count 1.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

22.   Defendant agrees that, provided the Court, before imposition of the mandatory consecutive sentence of 2 years' imprisonment on Count 25, imposes a term of imprisonment within or below the range corresponding to an offense level of ~~22~~ 29 SA TJ and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence, with the exception of the Court's calculation of defendant's criminal history category; (b) the term of imprisonment imposed by the Court, except to the extent it depends on the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $550,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the

1   statutory maximum; and (g) any of the following conditions of

2   probation or supervised release imposed by the Court: the conditions

3   set forth in General Order 20-04 of this Court; the drug testing

4   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

5   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

6        23.   Defendant also gives up any right to bring a post-

7   conviction collateral attack on the convictions or sentence,

8   including any order of restitution, except a post-conviction

9   collateral attack based on a claim of ineffective assistance of

10  counsel, a claim of newly discovered evidence, or an explicitly

11  retroactive change in the applicable Sentencing Guidelines,

12  sentencing statutes, or statutes of conviction.  Defendant

13  understands that this waiver includes, but is not limited to,

14  arguments that the statutes to which defendant is pleading guilty are

15  unconstitutional, and any and all claims that the statement of facts

16  provided herein is insufficient to support defendant's pleas of

17  guilty.

18       24.   The USAO agrees that, provided (a) all portions of the

19  sentence are at or above the statutory minimum and at or below the

20  statutory maximum specified above and (b), before imposition of the

21  mandatory consecutive sentence of 2 years' imprisonment on Count 25,

22  the Court imposes a term of imprisonment within or above the range

23  corresponding to an offense level of 22 and the criminal history

24  category calculated by the Court, the USAO gives up its right to

25  appeal any portion of the sentence, with the exception that the USAO

26  reserves the right to appeal the following the amount of restitution

27  ordered.

28

17

1      ## RESULT OF WITHDRAWAL OF GUILTY PLEA

2          25.  Defendant agrees that if, after entering guilty pleas

3      pursuant to this agreement, defendant seeks to withdraw and succeeds

4      in withdrawing defendant's guilty pleas on any basis other than a

5      claim and finding that entry into this plea agreement was

6      involuntary, then (a) the USAO will be relieved of all of its

7      obligations under this agreement; and (b) should the USAO choose to

8      pursue any charge that was either dismissed or not filed as a result

9      of this agreement, then (i) any applicable statute of limitations

10     will be tolled between the date of defendant's signing of this

11     agreement and the filing commencing any such action; and

12     (ii) defendant waives and gives up all defenses based on the statute

13     of limitations, any claim of pre-indictment delay, or any speedy

14     trial claim with respect to any such action, except to the extent

15     that such defenses existed as of the date of defendant's signing this

16     agreement.

17     ## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18         26.  Defendant agrees that if any count of conviction is

19     vacated, reversed, or set aside, the USAO may: (a) ask the Court to

20     resentence defendant on any remaining counts of conviction, with both

21     the USAO and defendant being released from any stipulations regarding

22     sentencing contained in this agreement, (b) ask the Court to void the

23     entire plea agreement and vacate defendant's guilty pleas on any

24     remaining counts of conviction, with both the USAO and defendant

25     being released from all their obligations under this agreement, or

26     (c) leave defendant's remaining convictions, sentence, and plea

27     agreement intact.  Defendant agrees that the choice among these three

28     options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

27.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.   All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

19

1   speedy trial claim with respect to any such action, except to the

2   extent that such defenses existed as of the date of defendant's

3   signing this agreement.

4          c.   Defendant agrees that: (i) any statements made by

5   defendant, under oath, at the guilty plea hearing (if such a hearing

6   occurred prior to the breach); (ii) the agreed to factual basis

7   statement in this agreement; and (iii) any evidence derived from such

8   statements, shall be admissible against defendant in any such action

9   against defendant, and defendant waives and gives up any claim under

10  the United States Constitution, any statute, Rule 410 of the Federal

11  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

12  Procedure, or any other federal rule, that the statements or any

13  evidence derived from the statements should be suppressed or are

14  inadmissible.

15          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

16                       OFFICE NOT PARTIES

17  30.  Defendant understands that the Court and the United States

18  Probation and Pretrial Services Office are not parties to this

19  agreement and need not accept any of the USAO's sentencing

20  recommendations or the parties' agreements to facts or sentencing

21  factors.

22  31.  Defendant understands that both defendant and the USAO are

23  free to: (a) supplement the facts by supplying relevant information

24  to the United States Probation and Pretrial Services Office and the

25  Court, (b) correct any and all factual misstatements relating to the

26  Court's Sentencing Guidelines calculations and determination of

27  sentence, and (c) argue on appeal and collateral review that the

28  Court's Sentencing Guidelines calculations and the sentence it

1  chooses to impose are not error, although each party agrees to

2  maintain its view that the calculations in paragraph 17 are

3  consistent with the facts of this case.  While this paragraph permits

4  both the USAO and defendant to submit full and complete factual

5  information to the United States Probation and Pretrial Services

6  Office and the Court, even if that factual information may be viewed

7  as inconsistent with the facts agreed to in this agreement, this

8  paragraph does not affect defendant's and the USAO's obligations not

9  to contest the facts agreed to in this agreement.

10     32.  Defendant understands that even if the Court ignores any

11  sentencing recommendation, finds facts or reaches conclusions

12  different from those agreed to, and/or imposes any sentence up to the

13  maximum established by statute, defendant cannot, for that reason,

14  withdraw defendant's guilty pleas, and defendant will remain bound to

15  fulfill all defendant's obligations under this agreement.  Defendant

16  understands that no one -- not the prosecutor, defendant's attorney,

17  or the Court -- can make a binding prediction or promise regarding

18  the sentence defendant will receive, except that it will be between

19  the statutory mandatory minimum and the statutory maximum.

20                       NO ADDITIONAL AGREEMENTS

21     33.  Defendant understands that, except as set forth herein,

22  there are no promises, understandings, or agreements between the USAO

23  and defendant or defendant's attorney, and that no additional

24  promise, understanding, or agreement may be entered into unless in a

25  writing signed by all parties or on the record in court.

26

27

28

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          34.  The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     NICOLA T. HANNA
      United States Attorney

9

10     /s/                                          9/4/2020

      MARIA ELENA STITELER                          Date
11    Assistant United States Attorney

12                                                        9/3/2020

      TRACE JEVON JONES                             Date
13    Defendant

14                                                       9/3/2020

      STEPHANIE AMES                                Date
15    Attorney for Defendant TRACE JEVON
      JONES

16

17

18

19

20

21

22

23

24

25

26

27

28

                              22

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____9/3/2020_____
TRACE JEVON JONES                         Date
Defendant

23

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am TRACE JEVON JONES' attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

STEPHANIE AMES                                    Date  9/3/2020
Attorney for Defendant
TRACE JEVON JONES

24